UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

QUINTON MCLEAN,

Defendant.

No. 22-cr-394

**MEMORANDUM OPINION**

The Bail Reform Act, 18 U.S.C. §§ 3141–56, "entitles defendants to a prompt detention hearing, either immediately at the defendant's first appearance before a judicial officer, or within days thereafter." *United States v. Singleton*, 182 F.3d 7, 12 (D.C. Cir. 1999) (citing 18 U.S.C. § 3142(f)). Detention hearings typically examine whether defendants pose a serious risk of flight or "danger to the community if allowed to remain at large until [] trial." *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). "In recognition of the fact that defendants remain incarcerated between the time the court determines a hearing is necessary and the time the hearing occurs, *see* § 3142(f), Congress strictly limited the availability of continuances." *Singleton*, 182 F.3d at 12. The question before this Court was whether the Bail Reform Act authorized the government to fiat a three-day continuance, over the defendant's—and the Court's—objection.

**I.    BACKGROUND**

A.    Pretrial Detention

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Munchel*, 991 F.3d 1273, 1279 (D.C. Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). However, the "limited exception" has now swallowed the rule. Between 1983—the year before Congress enacted the Bail Reform Act—and

1

2019, federal pretrial incarceration rates skyrocketed from less than 24% to 75%. *See* Alison Siegler et al., *Freedom Denied: How the Culture of Detention Created a Federal Jailing Crisis*, Univ. Chi. L. Sch. Fed. Crim. Just. Clinic 1, 20–22 (Oct. 2022), https://freedomdenied.law.uchicago.edu/report [hereinafter *Freedom Denied*]. In the same timeframe, the average length of pretrial detention increased from less than two months to a year. *See id.* at 23. In other words, "this is the bad place," *The Good Place: Chapter 13: Michael's Gambit* (NBC television broadcast Jan. 19, 2017), where liberty is no longer the norm.[1]

      B.    <u>Defendant's Detention Hearing on December 2, 2022</u>

On December 1, 2022, a grand jury in the District of Columbia returned a one-count indictment charging Defendant Quinton McLean ("Mr. McLean") with violating 18 U.S.C. § 922(g)(1). *See* Indictment 1, ECF No. 1. On December 2, 2022, law enforcement arrested Mr. McLean. *See* Arrest Warrant 1, ECF No. 7. Later that day, Mr. McLean appeared before the undersigned for an initial appearance. *See* Min. Entry, Dec. 2, 2022.

During the initial appearance, the government moved for a continuance of the detention hearing for three days pursuant to Section 3142(f). *See id.* Mr. McLean objected and requested an immediate hearing, as he was concerned about losing his job. *See* Initial Appearance of Quinton McLean ("Initial Appearance") at 3:19:40 (Dec. 2, 2022). The government explained that the additional time would allow the government "to file a detention memo . . . and also to send some discovery over" to the defense. *Id.* at 2:41:01. But the undersigned had already indicated that a detention memorandum was unnecessary. *See id.* at 2:40:46. And Mr. McLean's attorney stated that he was prepared to proceed without additional discovery. *See id.* at 3:19:52. The government's

---

[1] The explosion in pretrial detention comes at a cost. Taxpayers spend over $1 billion annually to jail defendants before trial. *See Freedom Denied*, *supra*, at 23. And the human costs are not so easily calculated.

only response was that the Court was statutorily barred from denying its continuance request. *See id.* at 3:22:40.

The Court found that Section 3142(f) does not force judges to grant every three-day continuance request. To hold otherwise would run afoul of the text, frustrate the purpose of the Bail Reform Act, and inappropriately penalize presumed-innocent defendants. This Memorandum Opinion memorializes the reasoning for that decision.

## II.   ANALYSIS

### A.   Interpreting 18 U.S.C. § 3142(f)

This case involves a "pure legal question of statutory interpretation." *United States v. Wilson*, 290 F.3d 347, 352 (D.C. Cir. 2002); *see United States v. Gloster*, 969 F. Supp. 92, 98 (D.D.C. 1997) (interpreting 18 U.S.C. § 922(g) and finding that it is not a "crime of violence" under the Bail Reform Act). The Court "look[s] to the 'traditional tools of statutory interpretation—text, structure, purpose, and legislative history'" to determine Section 3142(f)'s best meaning. *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1259 (D.C. Cir. 2020) (quoting *In re Sealed Case*, 932 F.3d 915, 928 (D.C. Cir. 2019)).

#### 1.   *The Text of 18 U.S.C § 3142(f)*

"In construing a statute, we look first for the plain meaning of the text. If the language of the statute has a 'plain and unambiguous meaning,' our inquiry ends so long as the resulting 'statutory scheme is coherent and consistent.'" *United States v. Barnes*, 295 F.3d 1354, 1359 (D.C. Cir. 2002) (quoting *Wilson*, 290 F.3d at 352).

The disputed provision provides that:

> The hearing *shall* be held *immediately* upon the person's first appearance before the judicial officer *unless* that person, or the attorney for the Government, *seeks* a continuance. Except for good cause, a continuance on motion of such person may not exceed five

>days (not including any intermediate Saturday, Sunday, or legal holiday), and a continuance on motion of the attorney for the Government *may not exceed* three days (not including any intermediate Saturday, Sunday, or legal holiday). During a continuance, such person shall be detained . . . .

18 U.S.C. § 3142(f)(2)(B) (emphasis added). The textual dispute centers on whether the language "unless . . . the attorney for the Government [] seeks a continuance," *id.*, forces the Court to grant any request for a continuance made by the government, irrespective of the reason.

"The Supreme Court has made clear 'that when a statute uses the word 'shall,' Congress has imposed a mandatory duty upon the subject of the command.'" *Verplanck v. England*, 257 F. Supp. 2d 182, 188 (D.D.C. 2003) (quoting *Forest Grdns. v. Babbitt*, 174 F.3d 1178, 1187 (10th Cir. 1999)) (citing *United States v. Monsanto*, 491 U.S. 600, 607 (1989)). Accordingly, the word "shall" in "[t]he hearing shall be held immediately" is a command. 18 U.S.C. § 3142(f)(2)(B); *see Clean Water Action v. Pruitt*, 315 F. Supp. 3d 72, 80 (D.D.C. 2018) (collecting cases). And "immediately" means "without interval of time." *Immediately*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/immediately (last visited Sept. 20, 2024).

Of course, the sentence does not end there. The second clause carves out an exception: "unless that person, or the attorney for the Government, *seeks* a continuance." § 3142(f)(2)(B) (emphasis added). "We must presume that Congress says what it means and means what it says, and therefore must apply a statute as it is written, giving its terms the ordinary meaning that they carried when the statute was enacted." *Norfolk S. Ry. Co. v. Perez*, 778 F.3d 507, 512 (6th Cir. 2015) (citations omitted) (citing *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992); *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 226 (2014)). Ordinarily, to "seek" means "to ask for[,]" "request[,]" or "to try to acquire or gain." *Seek*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/seek (last visited Sept. 20, 2024). Common usage tracks this: when Janet *seeks* Jason's hand in marriage, it is a request that Jason has the choice to

4

answer. Thus, § 3142(f)(2)(B) permits the government to ask for, request, or try to gain a continuance from the court.

The government hopes to read in additional meaning to Section 3142(f): not only does it read the statute to permit it to *seek* a continuance, but it reads it to also "divest the court of its discretion to" grant that request. *Rogers v. Amalgamated Transit Union Loc. 689*, 115 F. Supp. 3d 76, 79 (D.D.C. 2015). But statutes cannot be interpreted in a manner that nullifies discretion given to courts. *See id.* (rejecting interpretation of the statute of limitations that would strip the court of its "discretion to extend time" under the Federal Rules of Civil Procedure). Indeed, a "trial judge enjoys great discretion in ruling on a motion for a continuance." *United States v. Poston*, 902 F.2d 90, 96 (D.C. Cir. 1990); *see United States v. Flynt*, 756 F.2d 1352, 1358 (9th Cir. 1985), *amended by* 764 F.2d 675 (9th Cir. 1985). This discretion is rooted in "the great deference . . . owe[d] district courts in what are effectively their case-management decisions," *Yesudian ex rel. United States v. Howard Univ.*, 270 F.3d 969, 971 (D.C. Cir. 2001) (cleaned up). "The ordering of [a continuance] is not a perfunctory or ministerial act on the district court's part. It would be a misuse of the statute for such motions to be granted so routinely that the statute amounts to no more than a provision for an automatic continuance on [a party's] request." *United States v. Fanter*, No. 8-cr-473, 2009 WL 1210556, at *1 (D. Neb. Apr. 28, 2009) (cleaned up) (citations omitted) (judge has discretion to decide if a hearing on competency is needed given that any such hearing then continues pending deadlines in the case). Notably, this Court is unaware of any statute granting an automatic continuance upon a party's request, further demonstrating that case-management decisions are for the courts, not the parties.[2]

---

[2] When Congress intends to make a procedural mechanism automatic, it does so explicitly. For example, certain statutes have clear language mandating automatic stays. *See, e.g.*, *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 143 S. Ct. 1689, 1691 (2023)

To support its preferred meaning, the government is "cherry-picking one word out of it[:]" unless. *Borden v. eFinancial, LLC*, 53 F.4th 1230, 1235 (9th Cir. 2022). Yet, "[s]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding . . . statutes." *Wittman v. Koenig*, 831 F.3d 416, 422 (7th. Cir. 2016) (quoting *State ex rel. Kalal v. Cir. Ct. for Dane Cnty.*, 681 N.W.2d 110, 124 (Wis. 2004).[3] "The operative provision—the key to everything that comes after—is the requirement that," *United States v. Voltz*, 579 F. Supp. 3d 1298, 1302 (N.D. Ala. 2022), a detention hearing "*shall* be held *immediately*[.]" § 3142(f)(2)(B) (emphasis added). This provision fortifies a contextual reading of "seeks" as a request for permission from the court, as opposed to an automatic fiat by the government that would mean detention hearings occur three days later, not "immediately."

---

("[T]he [Bankruptcy] Code includes a number of requirements, like the automatic stay provision [at 11 U.S.C. § 362(a)], that generally apply to *all* creditors."); *Nken v. Holder*, 556 U.S. 418, 424–25 (2009) (discussing the Immigration and Nationality Act's automatic stay provision, which was later repealed).

[3] The following hypothetical neatly illustrates why context is essential:

> Suppose a rule required football coaches to arbitrate any "dispute that arises in connection with the activities of an owner of a professional football team." According to a strict constructionist, a football coach would have to arbitrate any dispute that he has with an owner, regardless of the dispute's connection to the business of the football team. For example, if an owner sold a car with a faulty transmission to a football coach, the strict constructionist would require arbitration of the dispute because it arises in connection with an activity of the owner of the team. That interpretation would be foolish because it would ignore the context. A fair reading of the rule, in its context, would lead a reasonable reader to conclude that football coaches must arbitrate disputes that arise in connection with the activities of owners, *as owners of football teams*.

*Pictet Overseas Inc. v. Helvetia Tr.*, 905 F.3d 1183, 1190–91 (11th Cir. 2018) (Pryor, W., concurring).

This Court's reading reflects the broader context that "Congress strictly limited the availability of continuances." *Singleton*, 182 F.3d at 12. "Any other reading of the statute would render ['immediately'] superfluous." *Hincapie-Zapata v. U.S. Att'y Gen.*, 977 F.3d 1197, 1202 (11th Cir. 2020). And "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (cleaned up) (quoting 2A N. Singer, Statutes and Statutory Construction § 46.06, pp. 181–186 (rev. 6th ed. 2000)). In practice, the undersigned's experience is that detention hearings almost always occur three days after the initial appearance—not "immediately" thereafter—because of the government's reading of § 3142(f)(2)(B). This appears to be a national problem. *See* Marc Zilversmit, Note, *Granting Prosecutors' Requests for Continuances of Detention Hearings*, 39 Stan. L. Rev. 761, 765–68 (1987) [hereinafter Zilversmit] (cataloguing districts where continuances are treated as automatic). Because this practice diverges from the statute's explicit direction, it cannot be what Congress meant to permit. "Congress could have written a statute making [detention hearings occur within three days], but it did not. The actual statute makes [detention hearings occur immediately]." *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002).

Moreover, the words following "unless" signal an exception to the rule established by the words preceding it. And the "exception[] must not be interpreted so broadly as to swallow the rule." *In re Woods*, 743 F.3d 689, 699 (10th Cir. 2014) (citing *Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 530 (2009)). If Section 3142(f) entitles the government to an automatic continuance, the controlling mandate is neutralized and the exception becomes the rule—which is in fact what now happens *See* discussion *supra* Section II.A.1. This "undermin[es] the purpose of the statute itself." *Nat'l Fed'n of Fed. Emps. v. McDonald*, 128 F. Supp. 3d 159, 172 (D.D.C. 2015)

7

(cautioning against broadly constructing the "direct patient care" exception to the general rule established by 38 U.S.C. § 7422); *see Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Fed. Election Comm'n*, 177 F. Supp. 2d 48, 60 (D.D.C. 2001) (rejecting "sweeping reading" of regulatory exception to preserve the general rule), *aff'd*, 333 F.3d 168 (D.C. Cir. 2003). "It is implausible, to say the least, to suggest that, having created [the immediacy] rule, Congress then created an exception that would swallow the rule[.]" *McFadden v. U.S. Dep't of Just.*, 270 F. Supp. 3d 82, 89 (D.D.C. 2017). Accordingly, continuances are not automatic upon request—lest the tail wag the dog.

Finally, courts have characterized Section 3142 as permitting the government to seek—not requiring a court to grant—a continuance. In *Dolan v. United States*, the Supreme Court characterized the continuance at issue as one that a court "may" grant, not that the court must grant. 560 U.S. 605, 614 (2010). Others have gone so far as to assume the good cause standard would apply to the government's continuance request. *See United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987) ("The [Bail Reform] Act provides that the detention hearing be held 'immediately upon the person's first appearance before the judicial office' (or within three days if the government can show good cause[.])"). *But see United States v. Williams*, 1 F.3d 1237, 1 n.4 (5th Cir. 1993) (noting in passing the "the plain language . . . appears to require an *automatic* delay of three days without the need for the Government to show any cause.").

In sum, the best textual reading of Section 3142(f) is that judges have a mandate to hold a detention hearing "immediately" but the discretion to consider granting a request for a continuance. Nevertheless, this Court assumes arguendo that the statute is ambiguous and proceeds to other statutory interpretation tools.

2.  *The Legislative Purpose and History of 18 U.S.C. § 3142(f)*

This Court's interpretation is consistent with the broader purpose of the Bail Reform Act. "Congress did not formulate the pretrial detention provisions as punishment for dangerous individuals. Congress instead perceived pretrial detention as a potential solution to a pressing societal problem"—to "prevent[] danger to the community[.]" *Salerno*, 481 U.S. at 747 (cleaned up) (citations omitted). To accomplish this goal, Congress "limit[ed] the circumstances under which [pretrial] detention [could] be sought to the most serious of crimes" and entitled arrestees "to a *prompt* detention hearing." *Id.* (emphasis added).[4] In short, Congress carefully tailored the Bail Reform Act to address a "legitimate and compelling" interest in promoting public safety, while simultaneously minimizing any infringement on the "liberty" of presumed innocent people. *Id.* at 749–50; *see Benjamin v. Fraser*, 343 F.3d 35, 49–50 (2d Cir. 2003) (quoting *Bell v. Wolfish*, 441 U.S. 520, 536 (1979)) ("'A person lawfully committed to pretrial detention has not been adjudged guilty of any crime,' and thus, under the Due Process Clause, may not be punished in any manner-neither cruelly and unusually nor otherwise.") (cleaned up). If Section 3142(f) "*automatically* allows a prosecutor three extra days [before the detention hearing,] . . . the statute provides for the possible detention without bail of every person [who has a detention hearing]." Zilversmit at 764. This would run counter to the statutory goal that the pretrial deprivation of liberty be the "carefully limited exception." *Munchel*, 991 F.3d at 1279 (quoting *Salerno*, 481 U.S. at 755).

This goal is consistent with "the public's interest in the dispensation of justice that is not unreasonably delayed[.]" *Poston*, 902 F.2d at 96 (quoting *United States v. Burton*, 584 F.2d 485,

---

[4] "Prompt" is defined as "immediately." *Prompt*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/prompt (last visited Sept. 20, 2024). Another reminder of the mandate to hold the detention hearing right away.

9

489 (D.C. Cir. 1990)). Thus, "[t]he object of § 3142(f) is to guarantee a speedy bail determination, to prevent the magistrate [judge or district] judge from ordering the defendant temporarily detained, and then holding the key detention hearing at some much later time." *United States v. Alatishe*, 768 F.2d 364, 369 (D.C. Cir. 1985) (cleaned up).

The "legitimate and compelling" purpose of a detention hearing, *Salerno*. 481 U.S at 749, is to determine whether "any condition or combination of conditions . . . will reasonably assure the appearance of [the defendant] and the safety of . . . the community." 18 U.S.C. § 3142(f). A discretionary continuance allows the parties to "investigat[e facts] and prepar[e arguments]" for the detention hearing." Zilversmit at 764; *see* S. Rep. No. 98-225, at 21–22 (1983) (continuance allows the parties to "prepare adequately for the hearing"). This serves the statutory purpose. However, an automatic continuance does not. An automatic continuance "does not require the government to show how detention of an arrested person will protect the safety of the community or the integrity of the judicial process by preventing flight or obstruction of justice. . . . In short, the [three]-day detention may be wholly arbitrary." Zilversmit at 785. That automatic continuances "do[] not serve the stated goals of the statute[,]" *id.* at 785, favors courts interpreting § 3142(f)'s continuance provision narrowly. *See United States v. Cruz*, 50 F.3d 714, 719 (9th Cir. 1995) (construing a statute narrowly when Congress's intent was not clear and statute was written ambiguously). Indeed, if a "restriction of pretrial detention is . . . not reasonably related to a legitimate goal—if it is arbitrary or purposeless—[then] a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Bell*, 441 U.S. at 539.

The Bail Reform Act's legislative history supports this Court's rejection of an automatic continuance reading. Specifically, the legislative history reveals that Congress based § 3142(f) on

a D.C. Code provision, as noted by the Senate Committee on the Judiciary's Report (the "Committee"):

> Although a continuance may be necessary for either the defendant or the government to prepare adequately for the hearing, particularly if the defendant was arrested soon after the commission of the offense with which he is charged, the period of a continuance sought by the defendant and of one sought by the government is confined to five and three days, respectively, in light of the fact that the defendant will be detained during such a continuance. An extension of the continuance may be granted, however, for good cause. These time limitations are the same as those now incorporated in the pretrial detention provision of the District of Columbia Code.

S. Rep. No. 98-225, at 21–22. The D.C. Code's pretrial detention provision required that *all* continuances be predicated on a showing of "good cause." *See* D.C. Court Reform & Criminal Procedure Act of 1970, Pub. L. No. 91-358, § 23–1322(c)(3), 84 Stat. 473, 644 (1970) (overhauling D.C. criminal code). In contrast, Congress only extended the "good cause" requirement to continuances longer than three days when sought by the government or five days when sought by the defendant. *See* § 3142(f)(2)(B).

On the one hand, the legislative history suggests that Congress did not intend to authorize automatic continuances: "the Committee recognize[d that] a pretrial detention statute may nonetheless be constitutionally defective if it fail[ed] to provide adequate procedural safeguards or if it [did] not limit pretrial detention to cases in which it [was] necessary to serve the societal interests it [was] designed to protect." S. Rep. No. 98-225 at 8. On the other hand, Congress wrote out the "good cause" requirement for three-day continuances by the government but "failed to provide [an alternative] standard for judging [] requests for [such] continuances."[5] Zilversmit at

---

[5] But Congress did not need to write one in as continuances already had a default standard—balance-of-hardships. *See* discussion *infra* Section II.B. This is opposite automatic continuances which exist nowhere in the wild. *See supra* note 2.

11

772. Nonetheless, the Committee contemplated limits on three-day continuances, as the reason the Committee provided for them was "to [allow the parties to] prepare adequately for the hearing." S. Rep. No. 98-225 at 21–22. It stands to reason that if neither party needed additional time to prepare adequately for the hearing, then a three-day continuance was impermissible.[6] *See id.*

Assuming that the legislative history is less than crystal clear—resulting in the ensuing confusion of the past forty years—where a criminal statute is ambiguous, "the tie must go to the defendant." *United States v. Santos*, 553 U.S. 507, 514 (2008).

    3.    *The Rule of Lenity*

Where a "statute [is] ambiguous, the rule of lenity . . . require[s] a narrow construction." *Singleton*, 182 F.3d at 13 n.12 (citing *Bifulco v. United States*, 447 U.S. 381, 387 (1980)). "The 'rule of lenity' is a new name for an old idea—the notion that 'penal laws should be construed strictly.'" *Wooden v. United States*, 595 U.S. 360, 388 (2022) (Gorsuch, J. concurring) (quoting *The Adventure*, 1 F.Cas. 202, 204 (No. 93) (CC Va. 1812) (Marshall, C.J.)). "It 'places the weight of inertia upon the party that can best induce Congress to speak more clearly,' forcing the government to seek any clarifying changes to the law rather than impose the costs of ambiguity on presumptively free persons." *Id.* at 1083 (quoting *United States v. Santos*, 553 U.S. 507, 514 (2008) (plurality opinion)). "The rule applies to penalty provisions in criminal statutes and is appropriate in bail proceedings as well." *Singleton*, 182 F.3d at 13 n.12 (cleaned up).

The rule of lenity further supports this Court's interpretation of Section 3142(f). Such an interpretation is narrow: three-day continuances are available—instead of the default—subject to

---

[6] Even if "the legislative history [] suggest[s] that the automatic continuances are available to facilitate preparation for a detention hearing, we do not believe that they should be used in wholesale fashion by prosecutors or courts forced to protect their detention positions as to a defendant they may never have heard of before that day." *United States v. Dominguez*, 783 F.2d 702, 704–05 (7th Cir. 1986).

12

a judge's discretion. And it appropriately places the burden on the government to induce Congress to speak more clearly if Congress wanted otherwise. Because the interpretation of Section 3142(f) conferring discretion to the judge is "more defendant-friendly" than the automatic continuance definition, "the rule of lenity dictates that it should be adopted." *Santos*, 553 U.S. at 514.

        B.    <u>Appropriate Standard for Granting a Continuance Under 18 U.S.C. § 3142(f)</u>

"The statute explicitly requires that a 3142(f) hearing be conducted 'immediately' following a timely motion for pretrial detention, subject only to *proper* requests for continuances by the parties." *Alatishe*, 768 F.2d at 369 (emphasis added). Rejection of the automatic continuance standard raises the question of what the appropriate standard is for a proper request. *Cf. McFadden*, 270 F. Supp. 3d at 89 (incorporating a nexus requirement to the "imminent danger" exception to the Prison Litigation Reform Act to protect the overarching rule).

One possibility is the "good cause" standard. Good cause is a "substantial reason . . . put forward . . . in good faith and which [is] not arbitrary, irrational, unreasonable, irrelevant[,] or capricious." *Warren v. U.S. Parole Comm'n*, 659 F.2d 183, 192 (D.C. Cir. 1981) (cleaned up). But Congress applied the good cause standard to requests by the government for continuances exceeding three days. *See* 18 U.S.C. § 3142(f)(2)(B). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (cleaned up) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)). Thus, the Court presumes that Congress did not intend to apply the "good cause" standard to the government's requests for continuances of up to three days.

If not good cause, then what? The answer is the default standard for continuance requests: balance of hardships. *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 (1983) (applying

13

the "preponderance-of-evidence standard generally applicable in civil actions" for Section 10(b) of the 1934 Securities Exchange Act which lacked a statutory standard of proof); *see also Doe v. Kaiser*, No. 6-cv-1045, 2007 WL 2027824, at *8 (N.D.N.Y. July 9, 2007) (using the standard which is "ordinarily applie[d] in connection with awards of punitive damages" to determine whether punitive damages are warranted under a statute which "does not specify a standard"). "[I]n ruling on motions for continuances trial judges must carefully evaluate and then balance [one party's] need for the continuance against the [other party's] interest in going forward." *United States v. Haldeman*, 559 F.2d 31, 83 (D.C. Cir. 1976). "Because no firm rules can be articulated as to when a continuance is required, the decision to grant a continuance is vested in the trial judge's discretion[.]" *Id.* But a judge's discretion is "not boundless[,]" rather, "[t]he judge must consider the justifications offered by the party seeking a continuance, balancing them against the judicial system's interest in expeditious proceedings." *Poston*, 902 F.2d at 96. Specifically, courts weigh a variety of factors relating to the parties' need "to prepare adequately for the hearing." S. Rep. No. 98-225 at 21–22. Factors include more time (1) "to obtain witnesses and affidavits[,]" (2) to enable defense attorneys "to obtain interpreters and effectively interview their clients, and [(3)] to permit the defense attorneys . . . an opportunity to visit their clients[.]" *United States v. Melendez-Carrion*, 790 F.2d 984, 991 (2d Cir. 1986). At bottom, judges must balance "the burdens that would be placed on [the defendant,] the [g]overnment[,] and the court if the request were granted." *Haldeman*, 559 F.2d at 84.

    C.    <u>Applying the Default "Balance of Hardships" Standard Here</u>

After applying the balance-of-hardships standard, the Court denied the government's request for a continuance. First, the government failed to provide any reason that made a continuance proper. The only hardship cited by the government was nonexistent: that a

continuance would have given Mr. McLean more time to receive discovery to prepare for the hearing. *See* Initial Appearance at 2:41:01. But Mr. McLean passed on this *magnanimous* offer as he concluded he was adequately prepared to proceed immediately. *See id.* at 3:19:52. Mr. McLean's need for discovery and how that related to his preparedness was Mr. McLean's concern, not the government's. *See id.* The government had multiple opportunities to raise other grounds for a continuance—such as to "investigat[e] and prepar[e,]" Zilversmit at 764—but it did not.[7] Second, the hardship to Mr. McLean was profound. The three-day continuance deprived him of his liberty and threatened his employment, i.e., his livelihood. *See Salerno*, 481 U.S. at 755. Finally, this Court was prepared to move forward with the detention hearing "immediately." 18 U.S.C. § 3142(f)(2)(B). Taken together, the balance of hardships weighed entirely against granting a continuance.

### III. CONCLUSION

It is time to leave the bad place.

Date: September 23, 2024

                                                                                        _____
                                                                                        ZIA M. FARUQUI
                                                                                        UNITED STATES MAGISTRATE JUDGE

---

[7] To the extent the government requested more time to draft a detention memorandum, this too was unavailing. Detention memoranda are largely for the court's benefit. This Court was prepared to proceed without a detention memorandum, mooting it as a basis for a continuance. *See* Initial Appearance at 2:40:46.